AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT   ☐ SUPERSEDING

FILED
MAR 2 1 2017
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**OFFENSE CHARGED**

Counts 1-3: 18 U.S.C. s 1341 -- Mail Fraud
Counts 4-6: 18 U.S.C. s 1956(a)(1) -- Money Laundering
Criminal Forfeiture: 18 U.S.C. s 981(a)(1)(C) and 982(a)(1), 28 U.S.C. s 2461(c)
Sentencing Allegation: 18 U.S.C. s 3571(d)

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY:  Counts 1-3: 20 years imprisonment; $250,000 fine; 3 years supervised release
Counts 4-6: 20 years imprisonment; $500,000 fine; 3 years supervised release
Alternative Fine: $2,274,440.00

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

**DEFENDANT - U.S**

▶ BENFORD CHAVIS, aka BEN CHAVIS

DISTRICT COURT NUMBER
CR 17 0134 HSG

---

**PROCEEDING**

Name of Complainant Agency, or Person (& Title, if any)
FBI

☐ person is awaiting trial in another Federal or State Court, give name of court _____

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY   ☐ DEFENSE

SHOW DOCKET NO. _____

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO. _____

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under _____

Name and Office of Person Furnishing Information on this form   BRIAN STRETCH
☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   Hartley M.K. West

**DEFENDANT**

**IS NOT IN CUSTODY**
1) ☒ Has not been arrested, pending outcome this proceeding.
   If not detained give date any prior summons was served on above charges ▶ _____
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District) _____

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction   ☐ Federal   ☐ State
6) ☐ Awaiting trial on other charges
   If answer to (6) is "Yes", show name of institution _____

Has detainer been filed?   ☐ Yes   ☐ No
If "Yes" give date filed _____

DATE OF ARREST ▶   Month/Day/Year _____
Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶   Month/Day/Year _____

☐ This report amends AO 257 previously submitted

---

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS   ☐ NO PROCESS*   ☒ WARRANT   Bail Amount: No Bail

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance
Defendant Address: _____

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____   Before Judge: _____

Comments:

CR 17 0134 HSG

# United States District Court

FOR THE
**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: OAKLAND

FILED

MAR 21 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

V.

BENFORD CHAVIS, aka BEN CHAVIS,

DEFENDANT(S).

## INDICTMENT

Title 18 U.S.C. § 1341 - Mail Fraud; Title 18 U.S.C. § 1956(a)(1) - Money Laundering; Title 18 U.S.C. § 981(a)(1)(C) and § 982(a)(1), and 28 U.S.C. § 2461(c) - Criminal Forfeiture; Title 18 U.S.C. § 3571(d) - Sentencing Allegation

A true bill.

_____
Foreman

Filed in open court this __21st__ day of
__March__.

_____
Clerk

Bail, $ _No bail amt wanted_

1  BRIAN J. STRETCH (CABN 163973)
   United States Attorney
2
3
                                                    **FILED**
4
                                                    MAR 21 2017
5
                                                    SUSAN Y. SOONG
6                                                   CLERK, U.S. DISTRICT COURT
                                                    NORTHERN DISTRICT OF CALIFORNIA
7
8                          UNITED STATES DISTRICT COURT
9                        NORTHERN DISTRICT OF CALIFORNIA
10                                OAKLAND DIVISION
11  UNITED STATES OF AMERICA,           )  CASE NO. CR 17 0134 HSG
                                        )
12        Plaintiff,                    )  VIOLATIONS: 18 U.S.C. § 1341 – Mail Fraud; 18
                                        )  U.S.C. § 1956(a)(1) – Money Laundering; 18 U.S.C.
13     v.                               )  § 981(a)(1)(C) and § 982(a)(1), and 28 U.S.C.
                                        )  § 2461(c) – Criminal Forfeiture; 18 U.S.C. § 3571(d)
14  BENFORD CHAVIS,                     )  – Sentencing Allegation
        a/k/a "Ben Chavis,"             )
15                                      )
        Defendant.                      )  OAKLAND VENUE
16  _____)

17                                    INDICTMENT

18  The Grand Jury charges:

19                            INTRODUCTORY ALLEGATIONS

20        At all times relevant to this Indictment, except as otherwise specified:

21        1.      From in or about 2000 to on or about June 21, 2007, BENFORD CHAVIS (CHAVIS)

22  was the Director of the American Indian Public Charter School (AIPCS).  From in or about 2006 to on

23  or about June 21, 2007, CHAVIS was the Director of the American Indian Public High School (AIPHS).

24  From in or about early 2007 to on or about June 21, 2007, CHAVIS was the Director of the American

25  Indian Public Charter School II (AIPCS II).  All three charter schools were located in Oakland,

26  California.

27        2.      CHAVIS served as Chief Executive Officer of American Indian Model Schools (AIMS),

28  the charter schools' umbrella organization, from mid-2007 through August 2011, and on AIMS' Board

    INDICTMENT

of Directors from October 31 to December 14, 2011. Through these positions, as well as his close relationships with other members of the schools' Boards of Directors, CHAVIS controlled many of the AIMS schools' operational and financial decisions.

3. CHAVIS owned and controlled American Delivery Systems (ADS) and Lumbee Properties, LLC (also referred to as Lumbee Holdings). CHAVIS used these entities to lease and purchase property, which he in turn leased to AIPCS, AIPCS II, and AIPHS.

4. Federal regulations implemented under the No Child Left Behind Act authorized the State Charter School Facilities Incentive Grant Program. 20 U.S.C. § 7221; 34 C.F.R. Pt. 226. These competitive grants were designed to assist state charter schools in meeting their facilities needs, and could be used to pay the costs of leasing, buying, or renovating school property. The federal funds were paid to states, which in turn awarded the grants to applicant charter schools. The California School Finance Authority (CSFA) administered the State Charter School Facilities Incentive Grants for the State of California.

5. States receiving State Charter School Facilities Incentive Grants had to comply with the Uniform Administrative Requirements for federal awards, which provided that the subrecipient schools follow general procurement standards. 34 C.F.R. § 226.3. These procurement standard regulations prohibited any "employee, officer or agent of the grantee or subgrantee" from "participat[ing] in the selection, award, or administration of a contract supported by Federal funds if a conflict of interest, real or apparent, would be involved." 34 C.F.R. § 80.36(a)(3). Such a conflict of interest existed "when: (i) The employee, officer or agent, (ii) Any member of his or her immediate family, (iii) His or her partner, or (iv) An organization which employs, or is about to employ, any of the above, has a financial or other interest in or a tangible personal benefit from a firm considered for a contract." *Id.*

6. State regulations similarly required that "[s]ubgrantees must avoid apparent and actual conflicts of interest when administering grants from the U.S. Department of Education." 4 Cal. Code Regs. § 10190(b). Charter schools seeking a Facilities Incentive Grant were required to submit an application to CSFA, which included a copy of the lease contract verifying the required payments. 4 Cal. Code Regs. § 10181(e).

///

INDICTMENT
2

## SCHEME TO DEFRAUD

7. Between in or about February 2006 and continuing through in or about May 2012, CHAVIS and others devised and implemented a scheme to defraud CSFA and to obtain money and property by means of material false and fraudulent pretenses, representations, promises, and concealments. Specifically, CHAVIS caused the AIMS schools to submit applications for federal grant funds to pay for lease expenses through the State Charter School Facilities Incentive Grant Program, concealing the material fact that CHAVIS owned and controlled the leasing entities. This arrangement established a conflict of interest that rendered the schools ineligible for the federal grant award.

8. As a result of CHAVIS's concealments, CSFA entered into agreements with the AIMS schools to award federal funds under the State Charter School Facilities Incentive Grant Program. After CSFA discovered the conflicts of interest, it terminated disbursements of the grant awards. The below chart reflects the total federal grant funds requested by, awarded to, and disbursed to each of the AIMS schools:

| School | Grant Funds Requested | Grant Funds Awarded | Grant Funds Disbursed |
|---|---|---|---|
| AIPCS | $1,153,234.44 | $740,701.00 | $559,753.00 |
| AIPHS | $636,480.00 | $276,750.00 | $253,671.00 |
| AIPCS II | $777,600.00 | $353,250.00 | $323,796.00 |
| Total | $2,567,314.44 | $1,370,701.00 | $1,137,220.00 |

CSFA disbursed grant funds by warrants, which it sent to the schools by U.S. mail.

### AIPCS – 3637 Magee Ave., Oakland

9. On or about February 27, 2006, AIPCS submitted an application to CSFA under the State Charter School Facilities Incentive Grants Program, seeking "rent, lease, mortgage or debt service payments" in the amount of $136,200.48 annually (totaling $408,601.44 for the three-year funding term) for 3637 Magee Avenue in Oakland, California. The application, signed by CHAVIS, contained an agreement and certification that the applicant would comply with all applicable federal laws, state laws, and CSFA program requirements, and a declaration under penalty of perjury that the information contained in the application and its attachments was true and correct. AIPCS submitted with the application a Lease Agreement dated July 1, 2005, between ADS as the Lessor and AIPCS as the

INDICTMENT
3

Lessee, for the 3637 Magee Avenue property. The AIPCS lease carried a five-year term at $11,350.04 per month, which amounted to $136,200.48 per year. CHAVIS signed the lease on behalf of AIPCS.

10. On or about July 18, 2006, CSFA awarded AIPCS a grant of $102,150.00 annually, for a total of $306,451.00 over the three-year grant period, 2006 through 2009. The Grant Agreement, signed by CHAVIS, contained a covenant that the school "shall comply with the Authority's Regulations and all Federal requirements," including 34 C.F.R. Pt. 226 with its requirement to follow general procurement standards.

11. On or about May 5, 2010, AIPCS submitted another State Charter School Facilities Incentive Grants application to CSFA, seeking lease payments of $248,211.00 annually (totaling $744,633.00 for the three-year funding term). The Applicant Agreement and Certification certified compliance with all federal laws, state laws, and CSFA program requirements, and that the application and attachments were true. AIPCS' application attached a Lease Agreement dated July 1, 2008, between ADS and AIPCS, for $20,684.32 per month. The lease specified that "[a]ll correspondence and business activities shall take place with Lessor and Dr. Ben Chavis exclusively."

12. On or about June 16, 2010, CSFA awarded AIPCS a grant of $144,750.00 annually, for a total award of $434,250.00 for the three-year grant period, 2010 through 2013. The Grant Agreement contained a condition that the school had complied with all regulations, including 34 C.F.R. Part 226 with its requirement to follow general procurement standards.

13. AIPCS' grant applications concealed CHAVIS's ownership and control of ADS. The applications further concealed that CHAVIS leased the 3637 Magee Avenue property, through ADS, for approximately $4,700.00 per month, which increased to approximately $6,040.00 per month in or about May 2010.

14. It was a part of the scheme to defraud that AIPCS deposited the CSFA disbursement checks, and then issued rent checks to ADS and Lumbee Properties. These rent checks were deposited into financial accounts controlled by CHAVIS. CHAVIS then issued rent checks from these same accounts pursuant to his master lease for the property to promote the fraud scheme.

///
///

INDICTMENT

4

### AIPHS – 3626 35th Ave., Oakland

15. On or about April 15, 2009, AIPHS submitted an application to CSFA under the State Charter School Facilities Incentive Grants Program, seeking annual lease payments of $212,160.00 (totaling $636,480.00 for the three-year term) for 3626 35th Avenue in Oakland. AIPHS submitted with the application a Lease Agreement dated February 15, 2006, between ADS and AIPHS, with a monthly payment of $17,000.00.

16. On or about July 16, 2009, CSFA awarded AIPHS a grant of $92,250.00 annually, for a total of $276,750.00 over the three-year grant period, 2009 through 2012. The Grant Agreement required compliance with federal regulations, including 34 C.F.R. Pt. 226 with its requirement to follow general procurement standards.

17. AIPHS's grant applications concealed CHAVIS's ownership and control of ADS. The applications further concealed that CHAVIS leased the 3626 35th Avenue property, through ADS, for approximately $2,200.00 per month, before purchasing the property in 2010 under a finance agreement pursuant to which he made monthly payments of approximately $8,403.35 until in or about 2013.

18. It was a part of the scheme to defraud that AIPHS deposited the CSFA disbursement checks, and then issued rent checks to ADS and Lumbee Holdings. These rent checks were deposited into financial accounts controlled by CHAVIS. CHAVIS then issued checks from these same accounts pursuant to his master lease for the property and his property financing agreement to promote the fraud scheme.

### AIPCS II – 171 12th Street, Oakland

19. On or about April 14, 2009, AIPCS II submitted an application to CSFA under the State Charter School Facilities Incentive Grants Program, seeking annual lease payments of $259,200.00 (totaling $777,600 for the three-year term) for 171 12th Street in Oakland. AIPCS II submitted with the application a Lease Agreement dated April 1, 2007, between Lumbee Holdings as Lessor and AIPCS II as lessee, with a monthly payment of $21,600.00, or $259,200.00 per year.

20. On or about July 16, 2009, CSFA awarded AIPCS II a grant of $117,750 annually, for a total of $353,250.00 over the three-year grant period, 2009 through 2012. The Grant Agreement

INDICTMENT

required compliance with federal regulations, including 34 C.F.R. Pt. 226's requirement to follow general procurement standards.

21. AIPCS II's grant applications concealed CHAVIS's ownership and control of Lumbee Holdings. The applications further concealed that CHAVIS owned the 171 12th Street property, through Lumbee Properties, LLC.

22. It was a part of the scheme to defraud that AIPCS II deposited the CSFA disbursement checks, and then issued rent checks to Lumbee Properties and Lumbee Holdings. These rent checks were deposited into a financial account controlled by CHAVIS. CHAVIS then issued checks from this same account to pay Lumbee Properties' mortgage on the property to promote the fraud scheme.

**COUNTS ONE THROUGH THREE**: (18 U.S.C. § 1341 – Mail Fraud)

23. The allegations set forth in Paragraphs 1 through 22 are realleged as if fully set forth herein.

24. From in or about February 2006 and continuing through in or about May 2012, including on the dates set forth below, within the Northern District of California and elsewhere, for the purpose of executing a scheme and artifice to defraud as to a material matter, and to obtain money and property by means of material false and fraudulent pretenses, representations, promises, and concealments, the defendant,

BENFORD CHAVIS,

did knowingly cause the following items to be delivered by mail according to directions thereon:

| Count | Approx. Date | Description of Mailing |
|---|---|---|
| 1 | March 27, 2012 | Grant disbursement warrant # 07-808268 in the amount of $12,062.00, payable to American Indian Public Charter School |
| 2 | April 19, 2012 | Grant disbursement warrant # 07-875580 in the amount of $7,687.00, payable to American Indian Public High School |
| 3 | April 25, 2012 | Grant disbursement warrant # 07-894177 in the amount of $9,812.00, payable to American Indian Public Charter School II |

Each in violation of Title 18, United States Code, Section 1341.

INDICTMENT
6

**COUNTS FOUR THROUGH SIX:** (18 U.S.C. § 1956(a)(1)(A)(i) – Money Laundering)

25. The allegations set forth in Paragraphs 1 through 22 are realleged as if fully set forth herein.

26. On or about the below dates, in the Northern District of California and elsewhere, the defendant,

BENFORD CHAVIS,

knowing that the property involved in the following financial transactions, as that term is defined in 18 U.S.C. § 1956(c)(4), represented the proceeds of some form of unlawful activity, did conduct and attempt to conduct such financial transactions which in fact involved the proceeds of specified unlawful activity, specifically mail fraud, with the intent to promote the carrying on of that specified unlawful activity:

| Count | Approx. Date | Transaction |
|---|---|---|
| 4 | April 2, 2012 | Check number 2518 in the amount of $5,040.00, from Pinal County Federal Credit Union account # -9503 |
| 5 | April 2, 2012 | Check number 2516 in the amount of $8,403.35, from Pinal County Federal Credit Union account # -9503 |
| 6 | April 30, 2012 | Check number 1964 in the amount of $38,000.00, from Bank of America account # -6671 |

Each in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

**FORFEITURE ALLEGATION:** (18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), and 28 U.S.C. § 2461(c) – Mail Fraud and Money Laundering Forfeiture)

27. The allegations contained in Paragraphs 1 through 26 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c).

///

///

INDICTMENT

28. Upon conviction of the offenses in violation of Title 18, United States Code, Section 1341 set forth in Counts One through Three of this Indictment, the defendant,

BENFORD CHAVIS,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, a money judgment.

29. Upon conviction of the offenses in violation of Title 18, United States Code, Section 1956 set forth in Counts Four through Six, the defendant,

BENFORD CHAVIS,

shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to a money judgment.

30. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to, or deposited with, a third party;
    c. has been placed beyond the jurisdiction of the court;
    d. has been substantially diminished in value; or
    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

///
///
///
///
///

INDICTMENT

SENTENCING ALLEGATION:

31. With respect to the charges in this Indictment, for the purposes of determining the maximum alternative fine, pursuant to Title 18, United States Code, Section 3571(d), the defendant,

BENFORD CHAVIS,

derived gross gains of approximately $1,137,220.00.

DATED: March ___, 2017                              A TRUE BILL.

_____
FOREPERSON

BRIAN J. STRECTCH
United States Attorney

_____
ELISE BECKER
Deputy Chief, Criminal Division

(Approved as to form: _____ )
                      AUSA WEST

INDICTMENT                                  9